# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

## LETTER OPINION

March 20, 2006

Leslie Faye Schwartz
United States Attorney's Office
970 Broad Street
Room 702
Newark, NJ 07102

(counsel for Plaintiff United States)

Michael P. Koribanics
Koribanics & Koribanics
685 Van Houten Avenue
Clifton, NJ 07013

(counsel for Defendant Joseph Scarbrough)

Joseph A Ferrante
56 Park Place
Newark, NJ 07102

(counsel for Defendant Michael Crincoli)

Anthony J. Fusco
150 Passaic Avenue
PO Box 838
Passaic, NJ 07055

(counsel for Defendant Gregory Richardson)

Jeffrey G. Carrigan
Cammarata, Nulty & Carrigan, L.L.C.
850 Bergen Avenue
Jersey City, NJ 07306

(counsel for Defendant Joseph Napolitano)

Clifford E. Lazzaro
Lazzaro & Associates
17 Academy Street
Suite 1212
Newark, NJ 07102

(counsel for Defendant Russell Fallacara)

Arthur Abrams
Abrams & Wofsky
255 Newark Avenue
Jersey City, NJ 07302

(counsel for Defendant John Yeswita)

Raymond Flood
Flood & Basile
39 Hudson Street
Hackensack, NJ 07601

(counsel for Defendant Joseph Bruno)

Timothy Boney
315 Market Street
Trenton, NJ 08611

(counsel for Defendant John Dennis)

Daniel J. Welsh, Jr.
Welsh & Galante Esqs.
551 Summit Avenue
Jersey City, NJ 07306

(counsel for Defendant John Grecco)

Dennis McAlevy
1814 Kennedy Blvd.
Union City, NJ 07087

(counsel for Defendant Michael Borelli)

Elise Dinardo
178 Central Avenue
Jersey City, NJ 07307

(counsel for Defendant Peter Grecco)

Michael Hughes
200 Mamaroneck Avenue
Suite 403
White Plains, NY 10601

(counsel for Defendant Nicholas Ladagona)


   Re: **United States v. Dentico, et al.**
     <u>**Criminal Action No.: 05-607 (WJM)**</u>

Dear Counsel:

  This matter comes before the Court on two motions. The first motion, by defendants Michael Borelli, Peter Grecco, John Grecco and Nicholas Ladagona, requests a severance of certain counts of the United States's indictment pursuant to Federal Rules of Criminal Procedure 8(b) and 14(a). The second motion, by defendant Joseph Scarbrough, asks the Court to dismiss

the indictment in this multi-defendant trial, or in the alternative grant a hearing, based on outrageous government conduct.  Oral argument on these motions occurred on March 12, 2006.  For the following reasons, the motions to sever by Michael Borelli, Peter Grecco, and Nicholas Ladagona are **GRANTED**, John Grecco's motion to sever is **DENIED**, and Joseph Scarbrough's motion to dismiss the indictment, or in the alternative for a hearing, is **DENIED.**

## I.      Motions for Severance

### A.      Background

On August 15, 2005, a federal grand jury issued a nineteen count indictment charging sixteen defendants, including Michael Borelli, Peter Grecco, John Grecco, and Nicholas Ladagona, with committing various crimes.  Counts 1 and 2 of the indictment (the "RICO Count(s)") charge certain defendants with violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968.  The remaining counts of the indictment charge the defendants with committing an assortment of substantive non-RICO offenses, such as gambling, making extortionate extensions of credit, and collection of unlawful debts (the "Substantive Count(s)").  Certain of these Substantive Counts (i.e., Counts 4 through14) replicate predicate acts charged in the RICO Counts.  Defendants Michael Borelli, Peter Grecco, John Grecco, and Nicholas Ladagona now move to sever those counts of the indictment charging them pursuant to Federal Rules of Civil Procedure 8(b) and 14(a).

### B.      Legal Standard for Severance

Rules 8(b) and 14(a) of the Federal Rules of Criminal Procedure govern the issue of severance.  Rule 8(b) provides that two or more defendants may be charged in the same indictment "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses."  Fed. R. Crim. P. 8(b).  This rule permits joinder "when a transactional nexus exists between the ... defendants to be joined." *United States v. Eufrasio*, 935 F.2d 553, 570 n.20 (3d Cir. 1991).  Rule 8(b) provides substantial leeway to prosecutors who wish to join racketeering defendants in a single trial.  *See id*. at 567.  The rule allows joinder of defendants charged with participating in the same conspiracy or racketeering enterprise.  *Id.*

Although joinder may be lawful under Rule 8(b), severance under Rule 14(a) may be appropriate where joinder creates a risk of substantial prejudice to a defendant.  *See id*. *at* 568. Rule 14(a) provides that "[i]f the joinder of offenses or defendants in an indictment ... appears to prejudice a defendant ... the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  Fed. R. Crim. P. 14(a).  Severance under Rule 14(a) is committed to the trial court's discretion.  *Eufrasio*, 935 F.2d at 568.  A defendant claiming improper joinder under Rule 14(a) must demonstrate "clear and substantial prejudice." *United States v. Davis*, 397 F.2d 173, 182 (3d Cir. 2005); *see also Eufrasio*, 935 F.2d at 568 (quoting *United States v. Reicherter*, 647 F.2d 397, 400 (3d Cir. 1981) (noting that a defendant

must demonstrate "clear and substantial prejudice" that would result in a "manifestly unfair trial" to establish the need for severance). When determining whether severance under Rule 14(a) should be granted, a trial court must carefully consider whether the charges and evidence that will be presented is such that a jury could not be expected to "compartmentalize" it for the purpose of determining guilt or innocence. *See United States v. Inigo*, 925 F.2d 641, 655 (3d Cir. 1991); *United States v. Dansker*, 537 F.2d 40, 62 (3d Cir. 1976).

### C.     Michael Borelli and Peter Grecco's Motion for Severance

Michael Borelli and Peter Grecco are charged in only Count 5 of the indictment. This count charges Borelli and Grecco with engaging in an illegal numbers operation. Importantly, this count replicates a predicate act in the RICO Counts. Therefore, joinder of Borelli and Grecco is proper under Rule 8(b). *See United States v. Irizarry*, 341 F.3d 273, 290 (3d Cir. 2003) ("Rule 8(b) permits the joinder of RICO and non-RICO counts in one indictment where the offenses charged in the non-RICO counts are also charged as racketeering predicates in the RICO counts"); *see also United States v. Somers*, 496 F.2d 723, 729-30 (3d Cir. 1974) ("Joinder ... of a conspiracy count and substantive counts arising out of the conspiracy [is permitted], since the claim of conspiracy provides a common link, and demonstrates the existence of a common scheme or plan."). However, this Court shall exercise its discretionary authority under Rule 14(a) and sever Count 5. Due to the minor role played by Borelli and Peter Grecco in the indictment, a substantial danger exists that a jury will not be able to compartmentalize the evidence against these two defendants. Accordingly, their motion to sever is **GRANTED.**

### D.     John Grecco's Motion for Severance

John Grecco is charged in the RICO Counts, Count 5, and Count 6. As mentioned earlier, Counts 5 and 6 replicate predicate acts in the RICO Counts. John Grecco argues that severance is required because his involvement in the RICO Counts, and Counts 5 and 6, was minimal.

Joinder here is proper under Rule 8(b). *See Irizarry*, 341 F.3d at 290; *see also Somers*, 496 at 729-30. However, unlike Michael Borelli and Peter Grecco, joinder of John Grecco will not be prejudicial under Rule 14(a). First, John Grecco's status as a "minor player" in these counts does not constitute sufficient grounds for granting a severance. *See United States v. Lore*, 430 F.3d 190, 205 (3d Cir. 2005) (quoting *Somers*, 496 F.2d at 730) (noting that "'a defendant is not entitled to a severance merely because evidence of a co-defendant is more damaging than the evidence against the moving party.'"). Second, since the indictment charges John Grecco in both RICO Counts and two Substantive Counts, severance would defeat "the fundamental principle that the federal system prefers 'joint trials of defendants who are indicted together []' because joint trials 'promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent judgments.'" *United States v. Urban*, 404 F.3d 754, 775 (3d Cir. 2005) (quoting *Zafiro v. United States*, 506 U.S. 534, 537 (1993)). Finally, a jury will be able to compartmentalize the evidence pertaining to John Grecco from the evidence introduced against his co-defendants. *See United States v. Bissell*, 954 F. Supp. 903, 909 (D.N.J. 1997) (noting that

"[a] risk of prejudice may often be cured with an appropriate instruction" and that "[j]uries are presumed to follow their instructions.") (citations omitted).  Therefore, John Grecco's motion to sever Count 5 is **DENIED.**

### E.    Nicholas Ladagona's Motion for Severance

Nicholas Ladagona in charged in only Counts 7 and 16.  Count 7 replicates a predicate act in the RICO Counts, but Count 16 does not.  Furthermore, Ladagona is the only defendant named in Count 16, which charges him with receipt and possession of good stolen from interstate shipment.

Joinder of Count 7 is proper under Rule 8(b).  *See Irizarry*, 341 F.3d at 290; *see also Somers*, 496 at 729-30.  However, the Court has serious concerns regarding joinder of Count 16.  This count charges Ladagona with possessing and transporting 162 stolen Bill Blass suits across state lines.  This count appears entirely different from those crimes charged in the remainder of the indictment, and therefore does not appear to arise out of the "same series of acts or transactions" in the indictment.  Therefore, joinder of Count 16 is improper under Rule 8(b).  Furthermore, even if joinder of this count were proper, it would nonetheless be highly prejudicial to allow joinder of this count under Rule 14(a).  Since the Court will sever Count 16, the Court shall sever Ladagona entirely from the indictment.  Therefore, Nicholas Ladagona's motion to sever is **GRANTED.**

## II.    Outrageous Government Conduct

Defendant Joseph Scarbrough moves to dismiss the indictment against him and his co-defendants, or in the alternative to grant him a hearing, based on alleged outrageous government conduct.  The indictment charges Scarbrough with engaging in various illegal activities ranging from racketeering and operating an illegal gambling business, to attempted extortion and making extortionate extensions of credit.  Even though trial on these charges has yet to occur, a large portion of the Government's case against Scarbrough will apparently come from tape recordings gathered by a cooperating witness ("CW").

Scarbrough alleges that since the investigation in that matter began in October 1999, the FBI permitted CW to participate in numerous crimes.[1]  For instance, Scarbrough alleges that CW paid him various cash "tributes" in order to be allowed to continue CW's own illegal gambling and loan operations.  In addition, Scarbrough alleges that, during the investigation, CW took illegal bets, made illegal loans, and paid for dinners attended by Scarbrough and his co-defendants. Scarbrough now argues that the Government's conduct during the investigation, through the assistance and sanctioning of CW's conduct, was so extensive and widespread as to

---

[1] In fact, Scarbrough alleges that the Government's use of CW extends farther back than October 1999.  According to Scarbrough, the FBI has been using CW in its investigations for over a decade.

amount to outrageous government conduct. As such, Scarbrough asks the Court to dismiss the indictment in its entirety or, in the alternative, to hold an evidentiary hearing on the propriety of the Government's conduct.

It is well-established that "a criminal defendant may raise a due process challenge to an indictment against [him] based on a claim that the government employed outrageous law enforcement investigative techniques." *United States v. Nolan-Cooper*, 155 F.3d 221, 229 (citing *United States v. Voigt*, 89 F.3d 1050, 1064 (3d Cir. 1996)). The genesis of this defense – termed the "outrageous government conduct" defense – traces its roots to dictum in *United States v. Russell*, 411 U.S. 423 (1972). In *Russell*, the Supreme Court remarked:

> We may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.

*Id*. at 431-431. Since *Russell*, numerous cases in this circuit have defined the contours of the outrageous government conduct defense. From a review of these cases, however, four tenants regarding the defense emerge. First, courts in this circuit are "extremely hesitant" in sustaining the outrageous government conduct defense. *See, e.g., Voigt*, 89 F.3d at 1065. Second, the challenged conduct must be "'shocking, outrageous, and clearly intolerable" and therefore the defense "is reserved for only the most egregious circumstances.'" *Nolan-Cooper*, 155 F.3d at 231 (quoting *United States v. Mosley*, 965 F.2d 906, 910 (10th Cir. 1992)). Third, the defense is not to be invoked every time "'the government acts deceptively or participates in a crime that it is investigating[,] [n]or is it intended as a device to circumvent the predisposition test in the entrapment defense.'" *Id.* (quoting *Mosley*, 965 F.2d at 910). Fourth, a trial court may deny the defense without holding a hearing when, even assuming the movant's facts to be true, the conduct does not rise to the level necessary to sustain the defense. *See, e.g., United States v. Rodriguez*, No. 99-5965, 2002 U.S. App. LEXIS 24628, at *19-20 (3d Cir. Dec. 5, 2002). These tenants set a high bar for those defendants seeking to employ the outrageous government conduct defense.

Only one Third Circuit case has actually sustained the use of this defense. In *United States v. Twigg*, 588 F.2d 373 (3d Cir. 1978), the Third Circuit granted a defendant's outrageous government conduct defense where a confidential witness in a drug case initiated conversations with defendants regarding the establishment of the drug operation, supplied the defendants with the necessary equipment and raw materials, acquired a production site, and watched the defendants as they were arrested. *Id*. at 375-76. The Government's assistance in *Twigg* was unique. In *United States v. Nolan-Cooper*, 155 F.3d 221 (3d Cir. 1998), the Third Circuit distinguished *Twigg* by explaining that *Twigg* involved a situation where the undercover operative "essentially concocted and conducted the entire elicit scheme." *Id*. at 230. Notably, the court in *Nolan-Cooper* noted that *Twigg* did not involve "a situation where an undercover agent [became] involved in the operation *after* the criminal scheme [was] created." *Id.* (emphasis

added). Since *Twigg* and *Nolan-Cooper*, it is now clear that "in order for the claim of outrageous government conduct to succeed, a government agent has to initiate the criminal conduct with the goal of obtaining a conviction and must draw the defendant into the illegal activity to bring about that goal." *United States v. Pitt*, 193 F.3d 751, 761 (3d Cir. 1999) (citing other decisions holding same).

The Government's conduct in this case differs significantly from the conduct found impermissible in *Twigg*. Here, it is not alleged that the Government created the scheme for which Scarbrough is charged. By all accounts, Scarbrough was engaged in the acts in the indictment long before the Government's involvement.[2] In fact, Scarbrough does not allege otherwise. Scarbrough fails to offer any allegation, in the form of affidavit or otherwise, showing that the Government created the crimes for which he is now charged.[3] This omission is critical.

Furthermore, even assuming that the Government orchestrated the alleged criminal conduct for which Scarbrough is now charged, it is clear that the Government's conduct falls far short of the "shocking, outrageous, and clearly intolerable" standard required for a showing of outrageous government conduct. To establish this defense, the Government's conduct must be extreme. For instance, in *United States v. Beverly*, 723 F.2d 11 (3d Cir. 1983), a Government agent told a defendant that he was looking for someone to burn down a building. *Id.* at 12. The agent then provided defendants with a gasoline can and disguises, drove them to the building, ensured that they had matches and watched while they were arrested for attempting to destroy the building by fire. *Id.* The Third Circuit in *Beverly*, however, found no showing of outrageous government. *Id.* at 13. Even assuming that Scarbrough's version of the facts are true, they fall far short of those in *Beverly*.

In light of these findings, the Court feels that it is unnecessary to hold a hearing on the viability of Scarbrough's "outrageous government conduct" defense and will deny the defense on the basis of Scarbrough's motion. Accordingly, Scarbrough's motion is **DENIED.**

---

[2] We note that the Court is not assessing whether or not Scarbrough made a showing for the defense of entrapment, which requires a showing of predisposition to commit the crimes charged. As aptly stated by the court in *Twigg*, "[t]he contention that defendant[] raise[s] ... is that the nature and extent of police involvement in this crime was so overreaching as to bar prosecution of the defendants as a matter of due process of law." *Twigg*, 588 F.2d at 377. As noted above, we do not find this argument persuasive when applied to the facts before us.

[3] The Court also notes that Joseph Scarbrough failed to provide the Court with an affidavit setting-forth the facts he deemed to constitute the alleged outrageous government conduct. The facts set-forth by Scarbrough were contained entirely in the affidavit drafted by the federal agent in support of his arrest warrant, and in Scarbrough's reply brief to the Government's opposition to the motion currently before the Court. However, even assuming the facts set forth in Scarbrough's briefs to be true, the Court cannot hold that a hearing on his outrageous government conduct defense is required and the Court will deny his defense.

**III.    Conclusion**

  For the foregoing reasons, Michael Borelli and Peter Grecco's motion to sever is **GRANTED.**  John Grecco's motion to sever is **DENIED.**  Nicholas Ladagona's motion to sever is **GRANTED**.  Finally, Joseph Scarbrough's motion to dismiss the indictment based on outrageous government conduct, and his request for a hearing in the alternative, is **DENIED.**


             s/ William J. Martini
             **William J. Martini, U.S.D.J.**